Jimmy CLIFF, Individually and for and on behalf of Sunflower Music (Bahamas) Ltd. and Sunflower Music Limited, Plaintiffs,

v.

PPX PUBLISHING COMPANY and Ed Chalpin, Defendants.

No. 77 Civ. 1510 (LFM).

United States District Court, S. D. New York.

Nov. 27, 1979.

Sherman & Citron, P.C., New York City by Michael Wexelbaum, New York City, for plaintiffs.

Morton L. Ginsberg, New York City by Joseph I. Kazarnovsky, New York City, for defendants.

## OPINION

MacMAHON, District Judge.

Plaintiffs move, pursuant to Rule 60(b)(6), Fed.R.Civ.P., for relief from our order and judgment entered January 25, 1978 dismissing plaintiffs' complaint and granting judgment for defendants on their counterclaim, and from our judgment entered December 11, 1978 in favor of defendants on their counterclaim in the amount of $93,674.55 plus interest and costs.

This motion arises out of plaintiffs' action for breach of two alleged contracts between plaintiffs and defendants. Allegedly, under the first contract, defendants were to act as managers of plaintiff Cliff, an entertainer and the principal of the other two plaintiffs. Defendants were to advise Cliff in his career and to use best efforts to procure bookings for him. Allegedly, under the second contract, defendants were granted the right to publish certain of Cliff's musical compositions in return for payment of royalties. Plaintiffs claimed that defendants breached the contracts; defendants counterclaimed alleging breach by plaintiffs.

On August 29, 1977, after a pre-trial conference, we entered an order on stipulation of all counsel, including plaintiffs' then counsel, Fred J. Halsey, Jr., stating that the action would be added to the reserve trial calendar on or after December 12, 1977; that thereafter, when reached, it would be placed on the ready trial calendar published in the New York Law Journal; and that, once published, all parties were required to be ready to proceed to trial on short telephonic notice. The order also stated that failure to comply could result in sanctions, including termination of the action.

The case was placed on the reserve trial calendar on December 12, 1977 and on the ready trial calendar on December 28, 1977. On January 5 or 6, 1978, Mr. Halsey was notified by telephone that the case would be set down for trial on January 9, 1978.

On January 6, 1978, Halsey sent a Mailgram to plaintiff Cliff's address in Kingston, Jamaica, in an attempt to alert him of the trial date, but Cliff claims that he did not receive the Mailgram. Upon Cliff's failure to appear and proceed to trial on January 9, we entered a default judgment on January 25, 1978 and referred the matter to Magistrate Schreiber to hold an inquest on the subject of damages on defendants' counterclaim.

Magistrate Schreiber held a hearing on May 11, 1978, and on July 11, 1978 submitted his report and recommendation. We adopted his report and accordingly entered judgment for defendants on December 11, 1978 in the amount of $93,674.55 plus interest and costs.

Plaintiffs assert that, because of a failure by Mr. Halsey to keep them apprised of their lawsuit, they did not learn of any of the proceedings that were held between the pre-trial order of August 29, 1977 and the judgment of December 11, 1978 until late January 1979, when defendants sought to garnishee certain property. Other counsel employed by plaintiffs to investigate the matter brought on the instant motion on September 18, 1979 by order to show cause, returnable in Part I. The Part I Judge (Palmieri, J.) denied the motion without prejudice to renewal before us, and plaintiffs renewed the motion before us on October 2, 1979.

■ Defendants assert first that the motion is untimely. They characterize the motion as one based on "mistake, inadvertence, surprise, or excusable neglect," subject to the one-year limitations period of Rule 60(b)(1). The one-year period is inapplicable here, however, for plaintiffs do not assert that Mr. Halsey was guilty of merely excusable neglect. Instead, they appear to assert that his conduct was grossly and palpably inexcusable.

Therefore, since plaintiffs rely solely on our power under Rule 60(b)(6) to grant relief for "any other reason justifying" it, we must determine whether their motion was made within a "reasonable time." Plaintiffs claim that they learned of the default judgments in late January 1979, yet they did not bring on this motion until September 18, 1979. The reason proffered for the delay of nearly eight months is that plaintiffs' new counsel was trying to investigate the matter.

There is authority in this circuit to the effect that where a plaintiff learns of the dismissal of his action but takes no steps to vacate the dismissal for six months, a motion under Rule 60(b) is untimely. *Coclin Tobacco Co. v. Brown & Williamson Tobacco Corp.*, 353 F.2d 727, 728 (2d Cir. 1965) (per curiam). More recent authority, however, has held eight months to be a reasonable time to delay between learning of the adverse judgment and filing a motion under Rule 60(b)(6). *United States v. Cirami*, 535 F.2d 736, 738, 742 (2d Cir. 1976) ("*Cirami I*"). Accordingly, we hold that the motion was timely made.

This brings us to the merits. The basis of the motion is that, except for his unsuccessful attempt to apprise the plaintiffs of the trial date, Mr. Halsey never notified them of any of the proceedings in the case. Though plaintiffs do not say so in so many words, they essentially assert that Mr. Halsey was grossly negligent in his handling of their case. Moreover, they assert that they are wholly innocent of any neglect or wrongdoing. For the reasons below, we deny the motion in all respects.

First, it is by no means clear whether a lawyer's gross neglect, even if proven, provides a basis for relief under Rule 60(b)(6). The test for such relief is whether the movant has shown "exceptional circumstances." *Cirami I, supra*, 535 F.2d at 738. Though one circuit court has held that it is not an abuse of discretion for a district court to hold that the lawyer's gross neglect amounts to an exceptional circumstance warranting relief, *L.P. Steuart, Inc. v. Matthews*, 117 U.S.App.D.C. 279, 329 F.2d 234

(D.C. Cir.), *cert. denied*, 379 U.S. 824, 85 S.Ct. 50, 13 L.Ed.2d 35 (1964), our own Court of Appeals has thus far declined to recognize gross neglect as a basis for relief. *Cirami I, supra*, 535 F.2d at 740–41. The proper remedy, as we have said before, is an action for malpractice. *Quagliano v. United States*, 293 F.Supp. 670 (S.D.N.Y. 1968).

Second, even if this were a case in which our circuit has recognized a basis for relief, such as an attorney's mental disorder, *see United States v. Cirami*, 563 F.2d 26, 34 (2d Cir. 1977) ("*Cirami II*"), or his complete disappearance, *see Vindigni v. Meyer*, 441 F.2d 376 (2d Cir. 1971), plaintiffs have failed to make a sufficient factual showing to warrant relief.

Despite plaintiffs' having retained new counsel since January 1979, they have produced no affidavit from Mr. Halsey explaining his behavior; nor have they sought to compel an explanation. Moreover, plaintiffs' assertion of their total innocence in the affair is unsupported by their affidavits. Not once do they assert that they ever tried to contact Mr. Halsey as to the status of the case between the filing of the complaint in early 1977 and their learning of the default judgment in January 1979. Worse, plaintiff Cliff apparently never advised Mr. Halsey where he could reach him in the event of trial, for he now claims that the Mailgram sent to Cliff's Kingston's address in January 1978 never reached him. We think that one who institutes a lawsuit has at least some duty to keep in communication with his lawyer. *See Dominguez v. United States*, 583 F.2d 615, 617–18 (2d Cir. 1978); *Cirami I, supra*, 535 F.2d at 741.

Dismissal is admittedly a harsh remedy, but it was justified by the pressing need to keep current with our trial calendar in this congested court, especially where it was due solely to the inexcusable neglect of plaintiffs and their counsel. *See Ali v. A & G Co.*, 542 F.2d 595, 596 (2d Cir. 1976). It is they, not the defendants nor other litigants awaiting access to scarce trial time nor the public, who should suffer the consequences.

Parenthetically, we do not condone the failure of plaintiffs' present counsel to sub-

mit a memorandum setting forth the authorities relied upon for relief, as required by Rule 9(b) of the General Rules of the United States District Courts for the Southern and Eastern Districts of New York. Counsel's assertion that there were no cases "on point" betrays an unhelpfully narrow view of relevance which did not aid our consideration of the case.

Accordingly, plaintiffs' motion for relief under Fed.R.Civ.P. 60(b)(6) from our judgments entered January 25, 1978 and December 11, 1978 is denied.

So ordered.

Stephen J. Kubik, Larry K. White, Tallahassee, Fla., for plaintiffs.

Frank E. Sheffield, Tallahassee, Fla., for Leon County Bldg. Supply Co., Inc.

Charles G. Cofer, Jacksonville, Fla., for General Electric Credit Corp.

Peter A. Knocke, Tallahassee, Fla., for Colonial Financial Services, Inc.