James TAYLOR, Plaintiff,

v.

The CITY OF NEW YORK; Allyn Sielaff, individually and in his official capacity as Commissioner of the New York City Department of Correctional Services; Robert DeRosa, individually and in his official capacity as Warden of Anna M. Kross Center (C–95) Prison; Deputy Warden Rosado; Deputy Warden Bedron; Captain Perez; Officer Rodriguez; Officer Torres; Officer Tucker: individually and in their capacities as Correctional Officers of the New York City Department of Correctional Services, Defendants.

No. 91. Civ. 4649 (DNE).

United States District Court,
S.D. New York.

Feb. 11, 1997.

James Taylor, Ossining, NY, pro se.

Paul A. Crotty, Corporation Counsel for the City of New York (Robert A. Bell, Assistant Corporation Counsel, of counsel), New York City, for defendants.

### Opinion & Order

EDELSTEIN, District Judge:

Presently before this Court is a motion for judgment on the pleadings brought by defendants Allyn Sielaff ("Sielaff"), the former Commissioner of the New York City Department of Corrections (the "DOC") and Robert DeRosa ("DeRosa") (the "moving defendants"), the Warden of the Anna M. Kross Center (the "AMKC"). Plaintiff James Taylor ("Taylor" or "plaintiff") did not respond to the motion. For the following reasons, the instant motion is granted.

### BACKGROUND

Plaintiff, an inmate at the Sing Sing Correctional Facility in Ossining, New York ("Sing Sing"), alleges that on July 13, 1990, while he was an inmate at the AMKC, he was beaten by several unknown correctional officers, as well as defendants Rosado, Bedron, Perez, Torres, Tucker, and Rodriguez. (Complaint, *Taylor v. City of New York*, 91 Civ. 4649, at 3–4 (June 16, 1991).) Plaintiff contends that, after his beating, he was treated for a "small cut [that] [he] received over [his] right eye," and a swollen face and head. *Id.* at 5. Plaintiff alleges that his "back, sides and stomach" were also injured. *Id.* Plaintiff asserts that, in addition to the medical care he received at the AMKC, he was brought to Kings County Hospital on the evening of July 13, 1990, and "had X-rays taken of practically [his] whole body." *Id.* The next day he was returned to the AMKC. *Id.* Plaintiff does not elaborate what, if any, injuries were diagnosed by the hospital.

Plaintiff alleges that as a result of inquiries regarding this incident made by himself and friends, he was transferred to the Brooklyn House of Detention. *Id.* On April 10, 1991, plaintiff was again transferred, this time to Sing Sing. *Id.* Plaintiff claims that, since arriving at Sing Sing, he has "been X-rayed twice and sent to an outside hospital, St. Lukes Hospital, located in Newburgh County to receive a [c]atscan of his chest to diagnose an irregularity within his chest cavity." *Id.* Plaintiff contends that his chest irregularity was sustained during the alleged assault by defendants. *Id.*

On July 10, 1991, plaintiff was permitted to pursue his claims arising from this incident *in forma pauperis*. (Order, *Taylor v. City of New York*, 91 Civ. 4649 (July 10, 1991).) On that same day, plaintiff filed his *pro se* Complaint. *See* (Complaint.) In his Complaint, plaintiff sought: (1) "[a] declaratory judgment that the acts described herein violate[d] plaintiff['s] rights under the United States Constitution; (2) a preliminary and permanent injunctions which prohibit defendants and other prison officials from harassing or retaliating against plaintiff and which require defendant DeRosa to remove all references to the instant lawsuit from plaintiff's prison files; (3) compensatory damages in the amount of $10,000,000; (4) punitive damages in the amount of $10,000,000; (5) a jury trial; (6) litigation costs; and (7) "[s]uch other and fyrther [sic] relief as this [C]ourt deems just, proper and equitable." *Id.* at 5–6. This

Court previously construed plaintiff's Complaint to plead a claim arising under Title 42, United States Code, Section 1983 ("Section 1983"). *See* (Order, *Taylor v. City of New York,* 91 Civ. 4649 (May 16, 1996).) Plaintiff has not disputed this Court's interpretation of his Complaint.

After both parties conducted discovery, on March 26, 1992, plaintiff applied for the appointment of counsel. On March 19, 1996, this Court denied plaintiff's application for counsel, (Order, *Taylor v. City of New York,* 91 Civ. 4649 (Mar. 19, 1996)), and ordered both parties to submit proposed pre-trial orders, proposed *voir dire* questions, and proposed jury charges no later than May 29, 1996. (Order, *Taylor v. City of New York,* 91 Civ. 4649 (Mar. 19, 1996).)

On May 15, 1996, the office of the New York City Corporation Counsel wrote to this Court on behalf of Sielaff and DeRosa to request that this Court "grant [these two] defendants leave of court to serve and file a motion for partial summary judgment by June 17, 1996, and reset the due date for the pre-trial order until the resolution of the summary judgment motion, or at least extend to a date after the submission of the motion." (Letter from Robert A. Bell, Esq., Assistant Corporation Counsel, to Honorable David N. Edelstein, United States District Judge for the Southern District of New York, at 1 (May 15, 1996).) On May 16, 1996, this Court granted this request, and vacated its March 19, 1996, Order concerning the parties' proposed pre-trial orders, *voir dire* questions, and jury charges. (Memorandum Endorsement, *Taylor v. City of New York,* 91 Civ. 4649 (May 16, 1996).)

On June 14, 1996, Sielaff and DeRosa filed the instant motion for judgment on the pleadings. (Notice of Motion, *Taylor v. City of New York,* 91 Civ. 4649 (June 11, 1996).) In their motion, Sielaff and DeRosa "move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on the ground that the Complaint fails to allege that [Sielaff or DeRosa] were personally involved or even know of the alleged incident from which this action arose." (Memorandum of Law in Support of Defendants Sielaff and DeRosa's Motion for Judg-

ment on the Pleadings, *Taylor v. City of New York,* 91 Civ. 4649 ("Dfts.Memo") at 1–2 (June 11, 1996).) Without such an allegation, the moving defendants contend that plaintiff's Section 1983 claim must fail. *Id.* at 3. Plaintiff has not responded to the instant motion.

## DISCUSSION

Federal Rule of Civil Procedure ("Rule") 12(c) provides in relevant part: "After pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). A Rule 12(c) motion "is designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice. 5A Charles A. Wright, Arthur R. Miller *et al.,* Federal Practice & Procedure, § 1367, at 509–10 (2d ed. 1990). A defendant may not move under Rule 12(c) until after its answer is filed. *Id.; see* Fed.R.Civ.P. 7(a).

In considering a motion for judgment on the pleadings pursuant to Rule 12(c), "all allegations in the complaint must be accepted as true[,] [and] all inferences must be drawn in favor of the [non-movant]." *Sheppard v. Beerman,* 94 F.3d 823, 827 (2d Cir.1996). Moreover, judgment on the pleadings "may only be granted when the pleadings show that it is 'beyond doubt that the [non-movant] can prove no set of facts in support of his claim which would entitle him to relief.'" *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 529 (2d Cir.1996) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). Finally, because plaintiff is acting *pro se,* this Court will construe his Complaint liberally, "applying less stringent standards than [are] used when a plaintiff is represented by counsel." *Braxton v. Brown,* No. 96 Civ. 187, 1997 WL 43525, at *1 (E.D.N.Y. Jan. 28, 1997) (citing *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980)); *Elliott v. Bronson,* 872 F.2d 20, 21 (2d Cir.1989).

In the case at bar, defendants Sielaff and DeRosa move for judgment on the pleadings on the ground that "plaintiff fails to allege

that an official policy, custom or practice of the New York City Department of Correction caused the alleged violations of plaintiff's constitutional rights, or that [Sielaff or De-Rosa] were personally involved in the incidents from which plaintiff's claims arose." (Dfts. Memo at 4.) They contend that "[a] [Section] 1983 Complaint which contains no allegations that a defendant violated the law may be dismissed as to that defendant." *Id.* In addition, the moving defendants assert that, as supervisory personnel Sielaff and DeRosa may be liable for an alleged constitutional violation "only where there is an affirmative link between the alleged violation and the adoption of a plan or policy, whether express or otherwise, showing their authorization or approval of the misconduct at issue." *Id.* at 5–6. Similarly, the moving defendants maintain that "a [law]suit against Sielaff [the former Commissioner of the DOC] may be an action against the City of New York ... [and, as such,] a plaintiff must plead and prove that the actions complained of were the result of an official policy, custom or practice of the [city] agency[,] that the official policy, custom or practice caused or was the moving force behind the plaintiff's alleged injuries, and that the injuries amounted to a constitutional violation." *Id.* at 4–5. As previously noted, plaintiff did not respond to Sielaff and DeRosa's motion, and thus, these arguments are unchallenged.

■ In order to prevail on a claim under Section 1983 against an individual, a plaintiff must prove that the defendant (1) acted under color of state law (2) in a manner that deprived the plaintiff of "any rights, privileges or immunities secured by the Constitution." 42 U.S.C. § 1983; *see Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986); *Eagleston v. Guido,* 41 F.3d 865, 876 (2d Cir.1994), *cert. denied,* — U.S. —, 116 S.Ct. 53, 133 L.Ed.2d 18 (1995). Section 1983 imposes liability for "conduct which 'subjects or causes to be subjected' the [plaintiff] to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 604, 46 L.Ed.2d 561

(1976). Accordingly, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

■ Liability under Section 1983 often arises due to an official's personal involvement in a constitutional deprivation. *See, e.g., Johnson v. Glick,* 481 F.2d 1028, 1033–34 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) (prison guard liable for beating inmate); *Sostre v. McGinnis,* 442 F.2d 178, 205 (2d Cir.1971) (*en banc* ), *cert. denied,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972) (prison warden liable for ordering an inmate's placement in solitary confinement). Supervisory personnel, however, may be liable under Section 1983 even where their involvement is more remote, such as failing to remedy a continuing constitutional violation after learning of it. *United States ex rel. Larkins v. Oswald,* 510 F.2d 583, 589 (2d Cir.1975) (affirming liability of former Commissioner of the New York state's correctional facilities and former warden of Attica for failing to correct a prisoner's unlawful segregated confinement). In addition, a supervisory official "may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue." *Williams,* 781 F.2d at 323. "An individual official's acts can rise to the level of 'policy' when 'senior personnel' knowingly 'acquiesce' in their subordinates' behavior." *Krulik v. Board of Educ. of the City of New York,* 781 F.2d 15, 23 (2d Cir. 1986). Finally, an individual holding supervisory authority may be personally liable for "gross negligence" in managing subordinates who participated in a constitutional deprivation. *Id.* at 323–24; *Wright v. McMann,* 460 F.2d 126, 135 (2d Cir.1972).

Irrespective of whether a Section 1983 defendant occupies a supervisory or low-level position, however, "[i]t is well-settled that 'where the complaint names a defendant in the caption, but no allegations indicating how

the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'" *Thomas v. Beth Israel Hosp., Inc.,* 710 F.Supp. 935, 942 (S.D.N.Y.1989) (quoting *Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y.1981)); *see also Kirkland v. Bianco,* 595 F.Supp. 797, 799 (S.D.N.Y.1984). Moreover, the Second Circuit requires that a complaint alleging the violation of civil rights "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient," *Thomas,* 710 F.Supp. at 942 (citing *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987), even where the plaintiff is a *pro se* litigant. *See id.; Wade v. Carey,* 503 F.Supp. 25, 26 (S.D.N.Y. 1980); *Raitport v. Chemical Bank,* 74 F.R.D. 128, 129 (S.D.N.Y.1977).

For purposes of resolving the instant motion, this Court assumes that the allegations set forth in plaintiff's Complaint are true, draws all inferences in favor of plaintiff, and construes plaintiff's *pro se* Complaint liberally. Such measures, however, do not alter the fact that the only reference in the Complaint to the moving defendants is the following:

> B. It is based upon [plaintiff's] information and belief, that at the time of the alleged incident, Allyn Sielaff was employed as Commissioner of the New York City Department of Correctional Services.
> C. It is based upon [plaintiff's] information and belief, that at the time of the alleged incident, Defendant Robert DeRosa, was the Warden of Anna M. Kross Center (C–95) located at 18–18 Hazen Street and legally responsible for the operation of the facility, and for the welfare of all the inmates in that prison.

(Complaint at 2.)

█ Even when viewed in the aforementioned favorable light, plaintiff has failed to allege any specific conduct by which the moving defendants can be held liable under Section 1983. Plaintiff has not alleged that Sielaff or DeRosa were even tangentially involved in the events underlying plaintiff's Section 1983 action. Moreover, while it is undisputed that Sielaff and DeRosa occupied supervisory positions, plaintiff's Complaint fails to allege the existence of a policy or custom which led to plaintiff's injuries, much less that these defendants created, acquiesced in, or even had knowledge of such a policy or custom. There is also no allegation that these defendant knew of, or acquiesced in, the sort of treatment of prisoners to which plaintiff claims he was subjected such that the existence of an institutional policy could be presumed. Finally, the Complaint alleges no conduct through which this Court could infer an allegation of defendants' "gross negligence" in order to sustain a Section 1983 claim against them. As the above-quoted excerpt plainly demonstrates, plaintiff simply has not pleaded a cause of action against these defendants. Plaintiff merely included Sielaff and DeRosa's names in his Complaint, but did nothing more. As a result, this Court finds that the pleadings show that it is "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief" with respect to defendants Sielaff and DeRosa. *See B.F. Goodrich,* 99 F.3d at 529. Accordingly, this Court finds that the instant Rule 12(c) motion should be granted.

In addition, because defendants were permitted to bring the instant motion only after this Court vacated its Order requiring both parties to submit (1) proposed pre-trial orders, (2) proposed *voir dire* questions, and (3) proposed jury charges, this Court finds it appropriate to reinstate that Order. Both parties are required to submit these items no later than forty-five (45) days after the instant Opinion is filed.

### CONCLUSION

IT IS HEREBY ORDERED THAT defendants Sielaff and DeRosa's Rule 12(c) motion is GRANTED.

IT IS FURTHER ORDERED THAT within forty-five (45) days of the filing of the instant Opinion & Order, both parties submit their respective: (1) proposed pre-trial orders; (2) proposed *voir dire* questions; and (3) proposed jury charges.

SO ORDERED